The next case today is Leonardo Viscito v. National Planning Corporation, Appeal Number 21-1081. Attorney Heemskirk, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, my name is Bart Heemskirk and I represent the Plaintiff Appellant Leonard Viscito. Before I begin with my argument, if it pleases the Court, may I reserve two minutes for rebuttal? Yes, you may. Thank you, Your Honor. In this case, Mr. Viscito appeals the entry of summary judgment against him. The District Court concluded erroneously that the Massachusetts Wage Act does not apply to Mr. Viscito's employment relationship with the defendant appellee, NPC, and two of its officers. The District Court erred by not applying the correct statement. We lost him. Mr. Heemskirk, can you hear us? Thank you. One moment, judges. Anna, can you reach out to him? I will. Thank you. Thank you. Mr. Heems? Anna? I can hear and see. We now have you back. All right. I'm back. Okay. Thank you. I assume we didn't hear whatever you said over the last two minutes. Thank you. Yes. It is Mr. Viscito. Are we ready? Yes. Yes. The last point you made was there was an error of law by the District Court in the test it What precisely was that error of law? Your Honor, the Court recited that it was applying the standard in Dow v. Casale, an appeals court case from Massachusetts, which adopted Restatement Second Conflicts of Law Section 9, which essentially says that a court can apply its local law so long as the application of the law would be reasonable in light of the relationship of the state and the other states to the person, thing, or occurrence involved. Both Mr. Viscito and NPC cited Dow and Restatement of Conflicts Section 9 as the standard, and indeed the Court itself, at the outset of its opinion, stated that it was applying Dow and Restatement 9 in its specific Go ahead. Why would Massachusetts care at all that a California company would pay a Florida resident working from his home in Florida? Those facts, I would suggest, Your Honor, are really stated in a light most favorable to NPC. Well, let me reduce it. It's uncontested he's a Florida resident. It is uncontested that he became a Florida resident about one year into his employment with NPC. Well, are you quibbling with him being a domicile versus a resident? No, I'm not. Didn't he move to Florida in 2008? No, he did not. He had a house in Florida as of 2008. He did not become a Florida resident until the end of 2014, Your Honor. But when did he move to Florida? But at all times, his primary registered NPC office from which he did business... Counselor, you were asked a question by Judge Kayada. You spoke right over him. I'm sorry. Yes, would you? It's hard with this video sometimes, so let me restate the question. I'm trying to get at when he... When did he move to Florida? He... Well, he didn't move to Florida full-time. That wasn't my question. When did he move to Florida? When was he principally living in Florida? Well, the difficulty with your question, Your Honor, is he maintained a residence in Massachusetts after he also purchased a residence in Florida. So, from... When did he get a Florida driver's license and when did he start voting in Florida? At the end of 2014 is when he declared residency in Florida. Four minutes. Yes. Let me go at it like this. We'll look in the record and see what... But let's assume that for at least a substantial period of time... Assume he was a Florida... Lived in Florida, not Massachusetts. And then now maybe you could answer my question. Why would Massachusetts care at all what a Florida domiciliary or resident was paid for working for a California company? Because the California company, NPC, availed itself to the privileges and benefits of Massachusetts by registering Mr. Vecito's Springfield office as a place of business of NPC. And throughout the tenure, Mr. Vecito maintained his office in Springfield, Massachusetts. That was the NPC registered office. Counsel, if I may, you seem to have shifted grounds in your answer. The first answer you gave was, oh gosh, this employer took advantage of doing business in Massachusetts and regardless of where the employee lived, that is sufficient to make it reasonable for Massachusetts to care. Are you actually arguing that? On that argument, every company that does business in Massachusetts would face the application of the Massachusetts Wage Act. It's a combination of that they do business there and that is specifically where they make their income from through Mr. Vecito. My question still stands. You've been told to assume he is not a resident of Massachusetts, domiciled or resident. So your point seems to be you don't look at the question of where the employee is located. You only look at where the company may be doing business as one jurisdiction among a number of others. Isn't that the logic of your argument? I think the logic of my argument is that, Your Honor, and that moreover, Dow itself says the domicile, the physical location of the employee does not trump all other factors. I was not suggesting it trumped. I was suggesting that the logic of your argument was that that might well be irrelevant. I don't think it's irrelevant. I think it's one small factor. But as to why Massachusetts would care, I think it's because you look at where the core of the relationship is between NPC and Vecito, and the core of the relationship right down to where the money comes from, which in essence is the core, is Massachusetts. The district court rejected that contention in light of all of the facts, undisputed facts. So what was wrong with the district court's conclusion? The district court never concluded anything based on the standard it articulated it was citing. They said they were going to look at the Dow standard of whether it was, quote, reasonable to apply Massachusetts law. They then went on, unlike Dow, which concluded its decision that it was eminently reasonable to apply Massachusetts law, they never applied the standard. It went on to talk about the most significant relationship, even though the other state laws were proffered. Okay, thank you. You have two minutes reserved. Attorney Heemskirk, please mute your audio and video at this time. Attorney Lynch, please unmute your audio and video. One moment, Judge Lynch. I do not see Judge Kayada at this time. Yes, I'm still here. Okay. Should we proceed? Yes. Attorney Lynch, please proceed with your argument. Good morning, Your Honors. Less than a year ago, this very same panel resolved the two issues that are now presented on this appeal. Specifically, in the Histert versus Hashin case, this panel confirmed that Massachusetts follows the functional choice of law approach that requires determining which state has the most significant relationship to the parties and the events at issue. At the same time, in that same case, in Histert cited in our papers, this panel held that a defendant failed to preserve his arguments that a different choice of law standard should apply because he never raised that issue below. Those holdings are dispositive of this appeal. Here, there's no question that plaintiff failed to preserve the argument that he now advances. This isn't a situation where plaintiff simply omitted the argument about which choice of law standard should apply. He actually argued to the contrary. He submitted two summary judgment motions and opposed defendant's summary judgment motion advocating specifically that the most significant relationship standard applies and arguing as to why he thought under that standard he should win his claim. Now, on appeal, plaintiff has taken a different approach. He advocates for an entirely different standard, but having argued below to the contrary, he can no longer advance that argument on appeal. And that's clear from the Histert holding as well as other holdings from this court, including the Puerto Rico Hospital Supply versus Boston Scientific case, which is cited in our papers. In light of that, Mr. Vecito's argument for a different standard in terms of choice of law should not even be entertained by this court. Putting that to the side, even if Mr. Vecito had not waived the argument that the most significant relationship test does not apply, the argument itself is just plainly incorrect. As I noted, this court and the district courts in this jurisdiction, the appellate courts in Massachusetts have all repeatedly applied the functional choice of law analysis that requires assessing which state has the most significant relationship to the parties and the events at issue. We said a number of cases in our papers on that point. I'm not going to belabor that, but I do want to point out the Dow versus Casale case, which counsel mentioned in his argument. The Dow decision specifically looked at which state has the most significant relationship to the employer, to the employee, and to the relationship between them. The Dow decision went further and identified specific facts that informed the analysis of which state has the most significant relationship to the person's alleged employment when the worker lives in another state, as we have here. The Dow court pointed out that the Massachusetts Wage Act starts with the premise that it's regulating employers. Consistent with that, it looked not just at where the employee lived, but also looked at the location and headquarters of the company, the location of the employee's managers and supervisors, whether the worker had frequent interaction with people in Massachusetts from the company. Mr. Lynch, are we talking about a Florida resident here or a Massachusetts resident or someone who was a Massachusetts resident during the beginning and then became a Florida resident at the end? I'm glad you asked that, Your Honor. The direct answer is we're talking about a Florida resident. What do you point to in the record that shows that as of the beginning of his relationship with your client, he was a Florida resident? Let me take a step back there. The beginning of the relationship between NPC and Mr. Visito was in 2013. The relevant period that we're focused on for purposes of this case, for limitations purposes, is actually 2015 going forward. This case was not filed until August of 2018. If you look at the record, though, there's in our undisputed facts that are in the record, which were not controverted, there was no response submitted at the district court level. We identify the precise amount of time and days that Mr. Visito spent in Florida versus Massachusetts or some other state. Even going back to 2014, the record shows that he spent 6% of his days in Massachusetts and well over half of his days in Florida. If you look at the other activities, he's traveling around the country and doing other things unrelated to his business, but the vast majority of his time is spent in Florida and not in Massachusetts. And we do have evidence in the record that he became a Florida voter. He had a Florida driver's license. He filed his taxes in Florida during this entire time. When did he become a Florida voter? Do you recall? The formalities of his Florida voting registration, I believe, was in mid-2014. But by 2015, when we're talking about the relevant period here, all of those things had happened. He was living, if not full-time, primarily in Florida as the numbers show and his own records in terms of his expenses that he was reporting in terms of his dinner reservations, his credit card receipts, all indicate that he's spending his time in Florida. And his point on this has not been, look, I was traveling back and forth to Massachusetts to conduct business on behalf of NPC. His argument, and if you look carefully at the record, it bears this out, is that I was working from Florida. I was in my Florida home, which is a registered FINRA office for regulatory purposes. But on the other end of the line, on the other end of the telephone or the other end of the video conference was somebody who was located in Massachusetts or some other state. When did he become a registered FINRA Florida person? He became registered in Florida back in 2013. He had a settlement with the regulators in Florida where he acknowledged he'd been performing investment advisory services in the state dating back to 2008. But as of the time that he joined NPC in 2013, he had a dual registration in Massachusetts and Florida, and his office located in Florida was a separately registered office for regulatory purposes. So he had that office, that office was a regulated office for securities purposes throughout his time when he was affiliated with NPC. So throughout his time at NPC, as I was indicating, he's communicating with people in Massachusetts, mostly his own employees and his own clients. But they're just on the other end of the line. The advice that he's providing, the services he's performing are all being performed from his home office, his registered office in Florida, which is where the crux of the activities is. But looking beyond that, looking at the factors that the Dow Court identified, the headquarters of NPC and all of its business operations were in California. All of the checks written to Mr. Busito, the 1099s were all issued from California. NPC had no corporate offices or employees in Massachusetts whatsoever. In terms of his interaction with NPC personnel, there was no NPC personnel in Massachusetts. All of his interaction with regulatory supervisors from the company and other people associated with NPC was with people in California. His only interaction with people associated with his business, Busito Financial Services, that's his only connection to Massachusetts, his own employees. Where did he pay taxes? He paid taxes down in Florida. That's another factor that the Dow Court looked at. Where did the company realize the revenue from his activities? When did he start paying taxes in Florida? Your Honor, the date is in the record. I want to say it was 2015, but I don't want to be misquoted on the record. It is set forth in our statement of facts and it is in the record. I apologize for not having that precise date with me today. The other factor identified by the court is whether there's a choice of law provision in the underlying contract itself. There is here, and we're not saying it's determinative, but it invokes California law, not Massachusetts law. If you look at all of the factors specifically listed and identified in the Dow case, not one of them supports the conclusion that the state with the most significant interest and relationship to NPC, Mr. Vecito, and their relationship is Massachusetts. Correctly, the district court determined that there are actually two states with a more significant interest. It's Florida, where Mr. Vecito lived and worked throughout his time with the company, and California, which is where the headquarters of NPC was located, where all of the paychecks were issued from, and where the contract indicates that California law should govern. Based on the most significant relationship test, it is not Massachusetts that has the most significant relationship, and Mr. Vecito cannot validly invoke the protections of Massachusetts law under the applicable standard. For that reason and for the reasons articulated by the district court, we submit that the holding should be affirmed and that the dismissal of Mr. Vecito's Massachusetts wage claim was entirely appropriate. Thank you. Thank you, Your Honor. Thank you, Attorney Lynch. Please mute your audio and video. Attorney Hameskirt, please unmute your audio and video and proceed with your two minutes of rebuttal. Thank you, Your Honor. I just wanted to make the point that there was no waiver or change of argument. At the district court level, we argued specifically that the standard in Dow applied that is reasonable. We cited Dow and we cited Section 9. Is it reasonable to apply Massachusetts law? The court was not misled. The court said it was applying the standard. It just never did. It went on to apply the most significant relationship test. We never made a conclusion about reasonableness. We made the argument there. We made it now. Hissert, where it was waived, was on appeal. The employee argued that the functional approach to choice of law did not apply. We argued that it did apply. Did we talk about the most significant relationship? Yes, because that was the argument made by in their motion for summary judgment. We say today and we said in our brief again, not only is it reasonable, even if they did apply, even applying the most significant relationship test, we still win. As to what test Dow was applying, Dow applied the reasonableness test. We know that because it concluded its opinion. Didn't Dow just refer to reasonableness as an overarching principle? And then Dow goes on to talk about most significant relationship test? It does. And then at the end, it concludes on pages 914 and 915 of the unofficial reporter that we find that the relationship with Massachusetts of the parties is reasonable. So having talked about, I think for emphasis, the significance, because it was such a layup for the court in Dow, I think, as I think it should have been here, they still conclude by... Counsel, that is time. Thank you. Thank you. Judge Lynch, I believe we're scheduled for a three-minute recess. Yes, we are. Thank you. Attorney Hemskirt and Lynch, please disconnect from the meeting. IT, please stop the audio stream as the court is in recess.